**This order is SIGNED.**





**Dated: December 14, 2016** _____

**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Brent David Christensen and Jo-Ann Hall Christensen,<br><br>Debtors. | Bankruptcy No. 15-29773<br><br>Chapter 13 |
| In re:<br><br>John Thomas Bird,<br><br>Debtor. | Bankruptcy No. 15-29783<br><br>Chapter 13 |

## MEMORANDUM DECISION

The matters before the Court are applications for compensation and reimbursement of expenses by the former chapter 7 trustee and his counsel. Because these two bankruptcy cases have the same procedural background and raise the same issue, the Court elects to deal with them together in this memorandum decision. Although applications for compensation are typically straightforward and without much controversy, the ones in these cases are different. The services the trustee and his counsel rendered, and for which they now seek compensation, were not

necessary to the administration of the estates, were not reasonably likely to benefit the estates, and could work a substantial harm on the debtors if they were approved.

In each of these cases, the debtors' residences were encumbered by liens in amounts that exceeded the properties' values on the petition date and were properly exempted by the debtors. The primary encumbrances are mortgages, but the Internal Revenue Service (IRS) has substantial tax liens on both properties. At the behest of the IRS, the trustee agreed to market and sell the debtors' homes despite the fact that they were over-encumbered. In exchange, the IRS agreed to subordinate its lien insofar as necessary to provide $10,000 to each estate, while the trustee and his counsel would use 11 U.S.C. § 724(b) to have their fees and costs paid in full from the sale proceeds prior to the IRS. The debtors, however, would not receive any payment in satisfaction of their claimed homestead exemptions. Instead, they would lose their homes without any funds in return with which to acquire a new place to live, and proceeds from the sale of the homes would go to the trustee and his counsel instead of toward the IRS's claim.

These types of arrangements between trustees and the IRS have the potential to cause another devastating consequence for debtors. In cases where the IRS would not be paid in full from such sales, tax debts would remain. Some of these debts might be dischargeable, but where they are not, the burden of estate administration would shift from the estate to the debtors. In essence, by paying a trustee and trustee's counsel before the IRS, the value in the debtor's home that would ordinarily be available to pay tax debts would instead be used to pay the trustee's administrative expenses, leaving unpaid tax debts that are foisted onto that debtor's shoulders. If this bargain were permitted, trustees would sell debtors' homes, potentially force debtors to pay for it, and give nothing to debtors from the sales. This is hardly the fresh start that the Code

contemplates. For the reasons that follow, the Court will deny the applications for compensation in their entirety.

## I. JURISDICTION

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. This is a core proceeding within the meaning of  28 U.S.C. § 157(b)(2)(A) and (O), and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

Brent and Jo-Ann Christensen (Christensens) filed a voluntary chapter 7 petition on October 19, 2015. On the same day, John Thomas Bird also filed a voluntary chapter 7 petition.[1] Gary E. Jubber (Trustee) was appointed as trustee in each case. The Court authorized the employment of Fabian VanCott, a law firm where the Trustee is employed, as the Trustee's general counsel on December 28, 2015.

In their schedule of assets, the Christensens listed a home with a value of $351,000.00. As of the petition date, the Christensens' home was encumbered by a deed of trust with an outstanding balance of approximately $300,000.00, a tax lien in favor of the IRS in the principal amount of $115,531.85,[2] and a tax lien in favor of the Utah State Tax Commission (USTC) in the

---

[1] The Court will refer to the Christensens and Mr. Bird collectively as the "Debtors."

[2] Amended proof of claim 2-2, filed April 15, 2016.

principal amount of $1,962.99.[3] The Christensens claimed a homestead exemption of $51,000 in their home.

In his schedule of assets, Mr. Bird listed a home with a value of $240,400.00. As of the petition date, Mr. Bird's home was encumbered by a deed of trust with an outstanding balance of approximately $144,275.17,[4] a second deed of trust with an outstanding balance of $20,550.05,[5] a tax lien in favor of the IRS in the principal amount of $147,661.33,[6] and judgment liens in the total amount of $5,383.93.[7] Mr. Bird claimed a homestead exemption of $30,000 in his home.

The Trustee objected to the Debtors' claimed homestead exemptions, asserting that the exemptions were "ephemeral" because there was no equity in the Debtors' homes (the homes are collectively referred to as the "Homes" or "Properties") to which any exemption might attach. As a consequence, the Trustee concluded that the "Debtors are not entitled to claim a homestead exemption."[8] The Trustee did not schedule hearings on his objections to the Debtors' exemptions, but his intentions soon became apparent. About a month after filing the objections to exemptions, the Trustee filed applications to authorize the employment of a real estate agent for

---

[3] The USTC amended its proof of claim 1-1 on June 1, 2016 to assert zero liability, but on the same day, it filed proof of claim 3-1, which asserts a secured claim in the amount of $1,962.99.

[4] Proof of claim 11-1, filed July 14, 2016.

[5] Proof of claim 14-1, filed August 26, 2016.

[6] Proof of claim 1-1, filed March 2, 2016.

[7] Docket No. 47 in Case No. 15-29783, Trustee's Motion to Approve Sale of Real Property Free and Clear of Liens, Exs. B & C.

[8] Docket No. 15 in Case No. 15-29773, Trustee's Objection to Debtors' Exemption, ¶ 5.

the purpose of selling the Homes,[9] to which the Debtors objected. Although the Trustee had

based his objections to exemptions on the Debtors' lack of equity, because he also asserted that

there may be equity in the Homes, the Court approved the applications to employ.

The Debtors responded to the Trustee's objections to their exemptions and filed motions

to abandon the Homes, and set those matters for hearing. On March 1, 2016, the Court entered

orders overruling the Trustee's objections to the Debtors' homestead exemptions and allowing

the claimed exemptions. The Trustee appealed this Court's orders allowing the exemptions.[10]

Next, the Trustee filed motions to approve stipulations he had entered into with the IRS

concerning the sale of the Homes (the Stipulations). An essential term of the Stipulations

provided that:

> [T]he Trustee shall be entitled to recover and shall recover *from the proceeds of any
> sale of the Property* the sum of $10,000 (the **"Carve Out"**)[11] as unencumbered funds
> for the benefit of the bankruptcy estate to be distributed in accordance with the
> priorities of the Bankruptcy Code.[12]

The Stipulations also provided that:

> *The IRS hereby subordinates any lien or claim it may have to the Property and the
> proceeds from the sale of the Property* to the extent of the Carve-Out and hereby

---

[9] Docket No. 18 in Case No. 15-29773; Docket No. 16 in Case No. 15-29783.

[10] The appeals were taken to the U.S. District Court for the District of Utah. On
November 21, 2016, the District Court dismissed the appeal in the Christensens' case as moot.

[11] In the Stipulations, the $10,000 sum is defined as the "Carve Out" (not hyphenated) but
is subsequently referred to as the "Carve-Out" (hyphenated). The Court will refer to the carve-
outs provided for by the Stipulations collectively as the "Carve-Outs."

[12] Docket No. 28 in Case No. 15-29773, at 10; Docket No. 26 in Case No. 15-29783, at
14 (emphasis in italics added).

waives and releases any and all claims it may have to the Carve-Out other than those claims it may have as a general unsecured creditor of the estate.[13]

The Debtors filed objections to the Stipulations. Among other things, the Debtors argued that the Stipulations and a sale of the Properties would dispossess them of their Homes while leaving nothing for their homestead exemptions, thereby making it unlikely that they could rent or purchase another residence.

Having found potential buyers for the Homes, the Trustee filed motions under 11 U.S.C. § 363(b) and (f) to sell the Homes (Sale Motions). The Sale Motions expressly provided that the real estate purchase contracts entered into with the buyers were conditioned on the Court's approval of the Stipulations. The Trustee proposed to sell the Christensens' home for $425,000.00 and Mr. Bird's home for $322,000.00. The Sale Motions stated that the proceeds of each sale would be used first to pay the 6% realtor commission, then the outstanding balance owed to consensual mortgage creditors, with the balance of the sale proceeds to be held by the Trustee pending further order of the Court. The Debtors objected to the Sale Motions on basically the same grounds as their objections to the Stipulations.

As it turned out, the proposed sales resulted in equity in the Homes. A basic calculation of the equity in the Homes is as follows:

Christensen

| | | |
|---|---|---|
| Purchase Price: | | $425,000.00 |
| Total Liens: | | $417,494.84 |
| 1st Mortgage: | $300,000.00 | |

---

[13] Docket No. 28 in Case No. 15-29773, at 10; Docket No. 26 in Case No. 15-29783, at 14 (emphasis added). The Stipulation in Mr. Bird's case inserts "11 U.S.C. § 724(b) and" after "to the extent of."

| IRS Lien: | $115,531.85 |
|---|---|
| USTC: | $   1,962.99 |
| Value in excess of liens: | $7,505.16 |

Bird

| Purchase Price | $322,000.00 |
|---|---|
| Total Liens: | $317,870.48 |
| 1st Mortgage: | $144,275.17 |
| 2nd Mortgage | $20,550.05 |
| IRS Lien: | $147,661.33 |
| Judgments | $   5,383.93[14] |
| Value in excess of liens: | $4,129.52 |

Before the Court could rule on the outstanding motions and objections, the Debtors converted their cases to cases under chapter 13 of the Bankruptcy Code (Code). They also amended their bankruptcy schedules to remove their claims for homestead exemptions. After conversion the Trustee and Fabian VanCott filed fee applications in the Debtors' cases requesting that their fees be allowed as administrative expense claims under 11 U.S.C. § 503(b).[15] In the Christensens' case, the Trustee seeks fees of $2,765.00, and Fabian VanCott seeks fees of

---

[14] Although Mr. Bird has not moved to avoid the judgment liens against his property under 11 U.S.C. § 522(f), it appears that such liens could be avoided.

[15] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

$28,249.65 and costs of $748.98.[16] In Mr. Bird's case, the Trustee seeks fees of $3,634.00, and

Fabian VanCott seeks fees of $30,450.60 and costs of $660.37.[17] The Debtors filed objections to

these fee applications.

## III. DISCUSSION

A chapter 13 plan "shall provide for the full payment, . . . of all claims entitled to priority

under section 507 of this title."[18] Administrative expense claims allowed under § 503(b), which

would include compensation and reimbursement awarded to trustees and their counsel under

§ 330(a),[19] are entitled to priority under § 507(a)(2).[20] Consequently, the Debtors' chapter 13

plans would need to pay in full any compensation the Court may award to the Trustee and his

counsel.

Any fee request by a professional appointed under the Code must start with an analysis of

§ 330(a)(1), which provides:

> After notice to the parties in interest and the United States Trustee and a hearing, and
> subject to sections 326, 328, and 329, the court may award to a trustee, a consumer
> privacy ombudsman appointed under section 332, an examiner, an ombudsman
> appointed under section 333, or a professional person employed under section 327
> or 1103–

---

[16] Docket Nos. 119 & 120 in Case No. 15-29773. Fabian VanCott's fee request represents voluntary reductions totaling approximately $11,110.85. *See* Docket No. 120, at 5-6.

[17] Docket Nos. 117 & 118 in Case No. 15-29783. Fabian VanCott's fee request represents voluntary reductions totaling approximately $12,376.90. *See* Docket No. 118, at 6-7.

[18] § 1322(a)(2).

[19] § 503(b)(2).

[20] § 507(a)(2).

8

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
(B) reimbursement for actual, necessary expenses.

In the Tenth Circuit, courts typically apply the adjusted lodestar approach, and the factors relevant thereto, in calculating reasonable attorney's fees under 11 U.S.C. § 330(a).[21] But the Court does not reach that inquiry in this case because the Trustee and his counsel are not entitled to compensation under § 330(a). Although § 330(a)(1) gives bankruptcy courts "wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable,"[22] the plain language of § 330(a)(4)(A) "circumscribes the courts' discretion" in awarding compensation.[23] That latter provision specifically states that "the court shall not allow compensation for— . . . (ii) services that were not—(I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case."[24] If the Trustee was attempting to achieve a result not permitted by the Code, then the services related to his efforts were neither

---

[21] *See Market Ctr. E. Retail Prop., Inc. v. Lurie (In re Market Ctr. E. Retail Prop., Inc.)*, 730 F.3d 1239, 1246-47 (10th Cir. 2013) (providing the twelve lodestar factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

[22] *In re Market Ctr. E. Retail Prop., Inc.*, 730 F.3d at 1248 (quoting *Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Fin. Servs., Inc.)*, 427 F.3d 804, 810 (10th Cir. 2005)).

[23] *In re Delta Petroleum (P.R.), Ltd.*, 193 B.R. 99, 108 (D.P.R. 1996); *see also Jensen v. U.S. Trustee (In re Abraham)*, 221 B.R. 782, 784 (10th Cir. BAP 1998) ("The discretion of a bankruptcy court to award compensation is limited by the court's determination that the services were reasonably likely to benefit the debtor's estate. 11 U.S.C. § 330(a)(4)(A)(ii)(I). Likewise, a bankruptcy court may not award compensation for services that were not necessary for the administration of the case. 11 U.S.C. § 330(a)(4)(A)(ii)(II).").

[24] § 330(a)(4)(A).

9

necessary to the administration of the case nor likely to benefit the estate. The burden to prove that requested fees are reasonable sits with the fee applicant.[25]

## A. The Trustee's Services Were Not Necessary to the Administration of the Case.

Prior to the enactment of the Bankruptcy Reform Act of 1978, it was asserted that "some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions."[26] Congress took notice and enacted § 554, authorizing courts to compel abandonment of valueless property upon request of a party in interest.[27] "[T]he recognized purpose of § 554(b)—which allows parties in interest to move for abandonment—is to prevent trustees from unnecessarily administering assets that bring no value to the estate and to thwart the practice of trustees increasing their own commissions by not abandoning valueless property on their own."[28]

A chapter 7 trustee's duties are created by Congress through statute, and the Office of the United States Trustee has prepared the Handbook for Chapter 7 Trustees (Trustee Handbook),[29] which directs trustees with respect to those duties. The two are complementary, with the statutes

---

[25] *In re Commercial Fin. Servs., Inc.*, 427 F.3d at 811.

[26] *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987).

[27] *See id.*

[28] *In re Sunbum5 Enters., LLC*, Nos. 6:10-cv-1268-Orl-28, 6:10-cv-1269-Orl-28, 2011 WL 4529648, at *9 (M.D. Fla. Sept. 30, 2011). In these cases, the Debtors filed motions to abandon the Homes under §554(b), to which the Trustee objected. The motions were never resolved because the Debtors converted their cases to ones under chapter 13.

[29] *See* Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, 1-2 (2012) ("[T]he trustee's primary statutory duties are set forth in part in section 704 of the Bankruptcy Code and are detailed more thoroughly in other parts of this Handbook.").

generally making broader pronouncements and the Trustee Handbook typically filling in much of

the detail on the nuts-and-bolts of case administration. Section 704(a)(1) directs the trustee to

"collect and reduce to money the property of the estate for which such trustee serves."[30] This

mandate is carried out through § 363(b), which gives the trustee the authority to sell property of

the estate. But there are restrictions. The Trustee Handbook directs that, in general, "a trustee

should not sell property subject to a security interest unless the sale generates funds for the

benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral

subject to the security interest."[31] Instead, when dealing with fully-encumbered assets "the

trustee's proper function is to abandon the property, not administer it."[32] Like Congress, the

United States Trustee was attentive to the concern that trustees' actions could be driven by fees

and commissions. The Trustee Handbook provides these instructions on the duties of a trustee in

administering a case:

> *A trustee shall not administer an estate or an asset in an estate where the proceeds
> of liquidation will primarily benefit the trustee or the professionals*, or unduly delay
> the resolution of the case. The trustee must be guided by this fundamental principle
> when acting as trustee. Accordingly, the trustee must consider whether sufficient
> funds will be generated to make a meaningful distribution to unsecured creditors,
> including unsecured priority creditors, before administering a case as an asset case.[33]

---

[30] § 704(a)(1).

[31] Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees,
4-16 (2012).

[32] *In re KVN Corp.*, 514 B.R. 1, 6 (9th Cir. BAP 2014); *see also* Exec. Office for U.S.
Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, 4-7 (2012) ("In asset cases,
when the property is fully encumbered and of nominal value to the estate, the trustee must
immediately abandon the asset and contact the secured creditor immediately so that the secured
creditor can obtain insurance or otherwise protect its own interest in the property.").

[33] Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees,
4-1 (2012) (emphasis added).

11

These statements show that chapter 7 trustees are not encouraged to act as liquidating agents for secured creditors, who have their own remedies and could liquidate their own collateral if they so desired.[34] Rather, the aim of administering property is to generate proceeds sufficient to return a dividend to unsecured creditors.[35] Selling over-encumbered property usually does not create any value for the estate or for the benefit of unsecured creditors, and therefore a trustee should not administer such property.[36] In short, "[i]t is universally recognized . . . that the sale of a fully encumbered asset is generally prohibited."[37] If property is to be sold, there should be equity in it. "Bankruptcy courts have defined the equity that justifies a sale of property,

---

[34] *See In re Ryan-Jones*, No. 16-11026-RGM, 2016 WL 3478949, at *3 (Bankr. E.D. Va. June 20, 2016) ("Real property is generally sold for the benefit of the unsecured creditors, not the secured creditor. If there is no equity in the real property, the trustee will not usually administer it and the creditors secured by it are left to enforce their own security interests.").

[35] *E.g.*, *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016) ("A chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured.").

[36] *See Staiano v. Cain (In re Lan Assocs. XI, L.P.*, 192 F.3d 109, 119 (3d Cir. 1999) ("Courts are in agreement that fully encumbered assets are unlikely to benefit the estate, and, therefore, such assets are not likely to be justifiably administered."); *In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000) ("It is now almost universally recognized that where the estate has no equity in a property, abandonment is virtually always appropriate because no unsecured creditor could benefit from the administration."); *Noland v. Williamson (In re Williamson)*, 94 B.R. 958, 962-63 (Bankr. S.D. Ohio 1988) ("A trustee may sell a debtor's property under 11 U.S.C. § 363, but generally only to benefit the unsecured creditors, i.e. when 'the sale proceeds *will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate.*'"); *In re Landreneau,* 74 B.R. 12 (Bankr. W.D. La. 1987) (denying trustee's motion to sell certain property because the sale would net nothing for unsecured creditors); *In re Lambert Implement Co.*, 44 B.R. 860, 862 (Bankr. W.D. Ky. 1984) ("[T]he trustee as representative of the estate should not (under usual circumstances) be engaging in activities such as the sale of fully secured property where there is no potential equity for general creditors.").

[37] *In re KVN Corp.*, 514 B.R. at 5 (collecting cases).

12

consistently and explicitly, in one way: the value remaining for unsecured creditors above any secured claims and the debtor's exemption."[38]

These principles of estate administration are well-established and long-standing. In discussing the duties of an assignee in bankruptcy 135 years ago, the Supreme Court stated:

> An assignee in bankruptcy represents the general or unsecured creditors, and his duties relate chiefly to their interests. He is in no respect the agent or representative of secured creditors, who do not prove their claims. He need not take measures for the sale of incumbered property, unless the value of the property is greater than the incumbrance.[39]

There can be no doubt as to where a chapter 7 trustee's duties lie and how a trustee should approach the administration of over-encumbered property. Ordinarily, therefore, the sale of such property, and the services rendered in furtherance thereof, will not be considered necessary to the administration of the case.

The sale of fully-encumbered property typically benefits two parties: the trustee, who can administer the property and receive a commission on the disbursed proceeds, and the secured party, which has its collateral liquidated without having to undertake the toil and labor of foreclosure proceedings.[40] The inclusion of a carve-out is clearly meant to change the analysis by adding unsecured creditors to their ranks and assuring courts that this is not a self-interested transaction. The negotiation of carve-outs is expressly permitted by the Trustee Handbook. This represents an exception to the general rule that a trustee should not administer fully-encumbered

---

[38] *DeGiacomo v. Traverse (In re Traverse)*, 753 F.3d 19, 29 (1st Cir. 2014).

[39] *Dudley v. Easton*, 104 U.S. 99, 103 (1881).

[40] The Debtors have suggested that by using a chapter 7 trustee to liquidate real property subject to federal tax liens, the IRS is ignoring the provisions of 26 U.S.C. § 6334(a)(13)(B). That section specifically exempts a taxpayer's principal residence from levy.

13

property,[41] but there is a caveat: A "trustee may seek a 'carve-out' from a secured creditor and sell the property at issue if the 'carve-out' will result in a meaningful distribution to creditors."[42] But a trustee has no obligation to seek carve-outs from secured creditors or sell encumbered property subject to such agreements. The Trustee Handbook makes clear that a trustee can abandon property without equity and leave creditors with a security interest in it to enforce those interests. The sale of property without equity and the negotiation of a carve-out may provide a benefit to the estate, but it is not necessary to the administration of bankruptcy cases.

**B. The Trustee's Services Were Not Reasonably Likely to Benefit the Estate.**

Because the sale of property that has no equity and the negotiation of carve-outs from the proceeds of that property does not evince the necessity of administering that property, there must be a showing that the carve-out will benefit the estate—specifically unsecured creditors[43]—in order to justify the services related to the carve-out. This is simply a recognition that sales with carve-out agreements must be consistent with the traditional principle of asset administration: The sale must generate sufficient funds to benefit unsecured creditors.[44]

---

[41] *See In re KVN Corp.*, 514 B.R. at 6 ("Despite the general rule prohibiting the sale of fully encumbered property, chapter 7 trustees may seek to justify the sale through a negotiated carve-out agreement with the secured creditor.").

[42] Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, 4-14 (2012).

[43] "Services are . . . not compensable unless they were reasonably likely to provide a benefit to unsecured creditors. Accordingly, services provided in connection with a carve-out agreement with a secured creditor are not necessary unless that carve-out agreement provides a benefit to the unsecured creditors." *In re All Island Truck Leasing Corp.*, 546 B.R. at 534 (citation omitted).

[44] If, at the time services are rendered, the trustee and professionals know the recovery will be limited to administrative expenses related to the sale, there is no benefit to the estate.

14

Critical to determining whether services are likely to benefit the estate is the distinction between "property of the estate" and "property in which the estate has an interest." The commencement of a case creates a bankruptcy estate, and § 541(a) defines its scope. Section 541(a)(1) clearly states that the estate comprises all legal or equitable interests of the debtor in property as of the commencement of the case. The estate's interest in property is limited to the debtor's interests in property, and the debtor might not hold all possible interests in a piece of property. Section 541(d) contemplates this occurrence when it provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."[45] Other parties' interests in property are not part of the bankruptcy estate. If, for example, the debtor holds title to property jointly with others, the other parties interests' are excluded from the estate. Similarly, a secured creditor's interest in property is not property of the estate.[46] This principle arises commonly when property is subject to a secured interest for its full value. In that instance, "only th[e] legal interest passes to the estate; the equitable interest remains with the mortgage holder."[47]

Property that is properly exempted by the debtor ceases to be property of the estate. As explained in the legislative history, "[u]nder . . . [11 U.S.C. §] 541, all property of the debtor becomes property of the estate, but the debtor is permitted to exempt certain property from

---

[45] § 541(d).

[46] *See Owen v. Owen*, 500 U.S. 305, 308-09 (1991) (a mortgage holder's equitable interest in property does not pass to the estate).

[47] *Id.* at 308.

property of the estate under this section. **Property may be exempted even if it is subject to a lien**, but only the unencumbered portion of the property is to be counted in computing the 'value' of the property for the purposes of exemption."[48] The lack of equity to support a debtor's exemption was also addressed by the Supreme Court in *Owen*. The Supreme Court clearly rejected the argument that a debtor's exemptions are limited by unavoided encumbering liens.[49] The Supreme Court also made clear that a debtor's legal interest may be exempted and that value created by avoided liens may be exempted.

> Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c). No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted. Thus, if a debtor holds only bare legal title to his house—if, for example, the house is subject to a purchase-money mortgage for its full value—then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, § 541(d). And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. **Legal title will pass, and can be the subject of an exemption**; but the property will remain subject to the lien interest of the mortgage holder. This was the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), codified in § 522. Only where the Code empowers the court to avoid liens or transfers can an interest originally not within the estate be passed to the estate, and subsequently (through the claim of an exemption) to the debtor.[50]

When the Debtors filed these cases, each Home's value was less than the total amount of liens against it. Consequently, no equitable interest in the Homes passed to the estate, but legal title did. When the Debtors claimed homestead exemptions in their Homes, they were basing the

---

[48] S. Rep. No. 95-989, at 75-76 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5861-62 (emphasis added).

[49] *See Owen*, 500 U.S. at 308-09.

[50] *Id.* (emphasis in bold added).

16

exemptions on legal title, as *Owen* permits. The Trustee's objections to the Debtors' exemptions were based on a lack of equity in the Homes. As it turns out, the Trustee received offers to purchase the Homes for an amount greater than the liens, and the Debtors are entitled to exempt the equity up to the full exemption amount.[51] Although the Debtors have amended their bankruptcy schedules and do not presently assert homestead exemptions, at all times during the Trustee's administration of these estates, the Debtors did assert homestead exemptions.

**1. The Sale as Proposed by the Trustee Is Not Authorized by the Code.**

A "carve-out" is a term originally coined by the courts and parties to describe those instances where a secured creditor agrees that its cash collateral may be used to pay administrative expenses, even though its interest may not be adequately protected.[52] The term's meaning has broadened over time and may also refer to a secured creditor's agreement "to release funds to unsecured creditors as an incentive to the Chapter 7 trustee to administer the [encumbered] assets. . . . [I]t is essential to note that the carve out is a product of [an] agreement

---

[51] The United States Supreme Court has made clear that the dollar amount of a claimed exemption remains static, but the proposed sale price determines the extent of the payment the debtor is entitled to receive. *See Schwab v. Reilly*, 560 U.S. 770, 783 (2010).

[52] *E.g.*, *Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)*, 501 B.R. 549, 621-22 (Bankr. S.D.N.Y. 2013) ("A carve out is a provision of a cash collateral order that allows for some expenditure of administrative and/or professional fees to be paid before a secured creditor gets paid on its collateral. . . . The usual purpose of a carve out is to assure the payment of specified administrative expenses from a secured creditor's collateral in the event that the case goes badly, use of cash collateral is terminated, and sufficient unencumbered funds are no longer available to administer the case, usually after conversion to chapter 7.").

17

between the secured party and the beneficiary of the carve out."[53] The Stipulations concern the latter type of carve-out.

The Court acknowledges that a trustee's services expended in negotiating a carve-out may be reasonably likely to benefit a debtor's estate if the carve-out "will result in a meaningful *distribution* to creditors."[54] This assumes that the carve-out funds can in fact be distributed to unsecured creditors. But if the Trustee is prohibited from selling the Homes, there can be no Carve-Outs and the Trustee's services are not reasonably likely to benefit the Debtors' estates.[55]

Section 363(f) allows trustees to sell property of the estate under § 363(b) or (c) free and clear of interests in the property, including liens. Under Utah law, a homestead exemption is an interest in property.[56] The purpose of § 363(f) is to make property more attractive to buyers. "Without free and clear language, prospective buyers would be unwilling to pay a fair price for the property subject to sale; instead, the price would have to be discounted, perhaps quite

---

[53] *In re Nuclear Imaging Sys., Inc.*, 270 B.R. 365, 370 n.3 (Bankr. E.D. Pa. 2001) (citation and internal quotation marks omitted); *see also In re KVN Corp., Inc.*, 514 B.R. at 6 ("A carve-out agreement is generally understood to be 'an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position.'" (quoting *Costa v. Robotic Vision Sys., Inc. (In re Robotic Vision Sys., Inc.)*, 367 B.R. 232, 237 n.23 (1st Cir. BAP 2007))).

[54] Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, 4-14 (2012) (emphasis added).

[55] The Court recognizes that carve-outs can, in certain instances, be permissible and beneficial to a debtor's estate. Such instances include when the carve-out is not subject to a junior secured interest or a debtor's exemption, or when the parties with an interest in the carve-out consent to the distribution of the carve-out. These instances are not present in this case.

[56] Utah Code Ann. § 78B-5-503. Utah has opted out of the federal exemption scheme, and the Tenth Circuit Court of Appeals has made clear that "bankruptcy courts must resort to state law for interpretation of state exemption rights in homesteads." *Zubrod v. Duncan (In re Duncan)*, 329 F.3d 1195, 1198 (10th Cir. 2003) (citation and internal quotation marks omitted).

substantially, to account for the liabilities that the buyer would face simply as a result of acquiring the asset."[57] By "providing the buyer with what is essentially a full marketable title,"[58] § 363(f) benefits the estate by increasing the likelihood that the trustee will be able to sell property for a higher price and in a shorter time. But before a trustee can engage this statutory mechanism, at least one of five conditions must be satisfied. As relevant in these cases, those conditions include: consent of the entity holding the interest, a bona fide dispute concerning the interest, or the "entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of [its] interest."[59] Since the Debtors have expressly objected to the sale of the Homes, only the last two grounds are at issue.

### a. The Debtors' Exemptions Are Not in Bona Fide Dispute.

In the Sale Motions the Trustee argues that he can sell the Homes under § 363(f) because the Debtors' homestead exemptions are in bona fide dispute and the Debtors are not entitled to the full, or "fixed" value of their allowable exemption. The Debtors' homestead exemptions are not in bona fide dispute, however. There is no dispute that the Homes are the Debtors' primary personal residences and the Homes are "property" as defined by the Utah exemption statute.[60] The Debtors are therefore "entitled to a homestead exemption *consisting of property* in this state

---

[57] *In re Med. Software Sols.*, 286 B.R. 431, 446-47 (Bankr. D. Utah 2002) (quoting *WBQ P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97, 108 (Bankr. E.D. Va. 1995)).

[58] *In re WBQ P'ship*, 189 B.R. at 108; *see also In re Eveleth Mines, LLC*, 312 B.R. 634, 650 (Bankr. D. Minn. 2004) ("By affording clear title to purchasers from the estate, sales under § 363(f) make the estate's assets more attractive in the market.").

[59] § 363(f)(2), (4), & (5).

[60] *See* Utah Code Ann. § 78B-5-503(1)(d)(i).

19

in an amount not exceeding" $30,000 in value per individual.[61] The Trustee asserts that the

Debtors cannot avail themselves of a homestead exemption because the Homes' values are less

than the liens encumbering them. In other words, a homestead exemption should be disallowed if

there is no equity in the property to which the exemption can attach. The Trustee misreads the

law. The Utah exemption statute is clear: An individual is entitled to a homestead exemption

consisting of property not to exceed a certain value. It does not state that an individual is entitled

to an exemption consisting of value in the property. Although there was no "value" in the

Homes, and they remained subject to liens, the Debtors were entitled to assert exemptions in the

Homes.[62]

On the petition date, and at the time the Trustee entered into the Stipulations, the Homes

were subject to liens and the Debtors had exempted any remaining equity. The estates held no

equitable interest in the Homes, and the estates' interest was limited to the Debtors' legal

interest. While equity may not exist on the petition date, if a secured creditor agrees to cap its lien

at an amount less than the value of its collateral, equity is created in the property, which did exist

on the petition date.[63] The IRS's liens, to the extent of the Carve-Outs, were voluntarily capped

by the terms of the Stipulations. This is similar to an avoided lien, where "an interest originally

---

[61] Utah Code Ann. § 78B-5-503(2)(a)(ii) (emphasis added).

[62] Not only do *Owen* and the legislative history of § 522 make clear that property may be exempted even if it is subject to a lien for its full value, but Utah Code Ann. § 78B-5-504(5) also makes clear that property that includes a homestead is protected by the Utah exemption statutes.

[63] *See Owen*, 500 U.S. at 309; *Schwab*, 560 U.S. at 783.

not within the estate [is] passed to the estate, and subsequently (through the claim of an exemption) to the debtor."[64]

The Trustee's appeals of this Court's orders allowing the Debtors' homestead exemptions do not create a bona fide dispute because the Trustee's objections were mooted by two events: (1) the offers he received on the Homes, and (2) the Debtors' post-conversion removal of their claimed homestead exemptions. As to the first event, because the Trustee received offers to purchase the Homes for an amount greater than the valid liens on the Homes, there is no bona fide dispute that there is "value" in the Homes as defined by Utah Code Ann. § 78B-5-502(10). Consequently, the Trustee can no longer dispute the Debtors' homestead exemptions based on the premise that there is no equity in the Homes to which the exemptions could attach.[65] As to the second event, the District Court's memorandum decision and order in the Christensen appeal confirms that once the Christensens disclaimed any homestead exemption, the Trustee's appeal—and the objection underlying it—became moot.[66]

### b. The Trustee May Not Sell the Homes Without Paying the Full Amount of the Debtors' Homestead Exemptions.

Utah's exemption statutes not only permit debtors to exempt homestead property up to a specified amount of value, they also preclude execution sales of property that includes a

---

[64] *Owen*, 500 U.S. at 309.

[65] *See Schwab*, 560 U.S. at 783.

[66] *See* Docket No. 164 in Case No. 15-29773, Memorandum Decision and Order Granting Appellees' Motion to Dismiss, at 2-4.

21

homestead if the sale proceeds are insufficient to pay that amount of value in full.[67] A selling

judgment creditor must pay the homestead exemption in cash.[68] The Debtors could be compelled

to accept a money satisfaction of their homestead exemption, but only if the exemption is paid in

full. Because the Trustee could not have paid the Debtors' homestead exemptions in full, the

Homes were exempt from the Trustee's forced sale,[69] and § 363(f)(5) does not authorize the sale.

**2. The Carve-Outs Are Proceeds From the Sale of the Homes and May Be Exempted.**

In the Stipulations, the IRS unambiguously "subordinate[d] any lien or claim it may have

to the Propert[ies] and the proceeds from the sale of the Propert[ies] to the extent of the Carve-

Out[s]." A creditor with an allowed claim secured by a lien on property of the estate has a

secured claim to the extent of such creditor's interest in the estate's interest in the value.[70] If the

secured creditor caps its claim in an amount that is less than the value of the debtor's interest in

the property, the remaining value of the debtor's interest in the property is subject to other claims

or interests, if any. If there is any remaining value not subject to claims or interests, then it may

be distributed to unsecured claims in the priority dictated by the Code. Here, the Trustee and the

IRS expressly stipulated that "the Trustee shall be entitled to recover from the proceeds of any

sale of the [Properties] . . . (the '**Carve Out[s]**') . . . to be distributed in accordance with the

---

[67] *See* Utah Code Ann. § 78B-5-504(5) ("Property that includes a homestead may not be sold at execution if there is no bid which exceeds the amount of the declared homestead exemption."). Of course, a homestead exemption does not preclude all sales of property; a homestead may be sold by forced sale pursuant to purchase-money mortgages, statutory liens for property taxes, or judicial liens obtained for failure to pay child support. Utah Code Ann. § 78B-5-503(3).

[68] *Jackson v. Halls*, 314 P.3d 1065, 1067-68 (Utah Ct. App. 2013).

[69] Utah Code Ann. §§ 78B-5-503(3) & -504(5).

[70] § 506(a).

priorities of the Bankruptcy Code." It is clear that the Carve-Outs are proceeds from the Homes

and the value created because the IRS capped its claims. Pursuant to the Code and the terms of

the Stipulations, the Carve-Outs are subject to junior lien holders' interests and the Debtors'

homestead exemptions, which have priority over unsecured claims. Even if the Trustee were

permitted to sell the Homes, the Carve-Outs would be paid to the Debtors and not the unsecured

creditors.

Carve-outs are not a means for secured creditors to dictate payments to other creditors.

The Trustee and the IRS cannot, simply by agreement, defeat junior lien interests[71] or the

Debtors' homestead exemptions, nor can a stipulation between the Trustee and the IRS bind the

Court with respect to questions of law.[72] Once the IRS capped its claim, it could not direct the

allocation of the value that was created by its agreement.

Some courts have held that a secured creditor and the trustee may agree that the trustee

may receive a "tip" or "incentive bonus"[73] for doing a secured creditor's dirty work.[74] The Court

finds these cases unpersuasive. The essence of these decisions is that the "tip," "incentive

---

[71] In Mr. Bird's case there are judgment creditors whose interests cannot be defeated by an agreement between the Trustee and the IRS.

[72] *See Gitlitz v. Comm'r*, 182 F.3d 1143, 1146 (10th Cir. 1999) ("[I]t is well-settled that a court is not bound by stipulations of the parties as to questions of law." (quoting *Koch v. United States*, 47 F.3d 1015, 1018 (10th Cir. 1995))), *rev'd on other grounds*, 531 U.S. 206 (2001); *see also In re Albrecht*, 245 B.R. 666, 672 (10th Cir. BAP 2000) (affirming the bankruptcy court's conclusion that "it could not approve a stipulation in contravention of the law, regardless of whether the parties were in agreement").

[73] *E.g.*, *In re Diener*, No. 11-83085-MHM, 2015 WL 4086154 (Bankr. N.D. Ga. July 6, 2015); *In re Bunn-Rodemann*, 491 B.R. 132 (Bankr. E.D. Cal. 2013).

[74] The Court's use of the term "dirty work" simply refers to work that is unpleasant.

23

bonus," or "carve-out" is not proceeds from the property being sold but is rather proceeds from

the trustee's negotiating powers. This Court disagrees with these cases for a number of reasons.

First, these cases fundamentally mischaracterize the transaction. In all of these cases, the

secured creditor agreed to accept less than the full value of its collateral in satisfaction of its

secured claim; the secured creditor did not agree to pay the trustee. A trustee's efforts do not

change the nature of property constituting the carve-out. The proceeds from a § 363 sale are

proceeds from property of the estate.[75]

Additionally, the necessary result of the reasoning in these cases is that a trustee can

avoid the interests of junior lien creditors—and other interests—without their consent simply by

agreeing with the senior lien creditor that the trustee may retain some of the proceeds of the sale.

While it is correct that a debtor's right to negotiate with secured creditors passes to the trustee,[76]

that is not a right to negotiate a sale that would prejudice junior lien holders or the debtor. In

*Diener*, the court's view was that value in the property did not exist on the petition date but arose

only as a result of the trustee's exercise of the debtor's right to negotiate with the secured creditor

and was not subject to exemption. Although the trustee is the representative of the estate,[77] his

authority to negotiate with respect to estate assets is no greater than the debtor's rights, to which

the trustee succeeds when the debtor files bankruptcy. A debtor is not permitted to negotiate a

short sale with a secured creditor and retain proceeds when the property is subject to a junior lien,

---

[75] *In re Wilson*, 494 B.R. 502, 506 (Bankr. C.D. Cal. 2013) ("Funds derived from these sales are property of the estate and are subject to valid exemptions.").

[76] *In re Diener*, 2015 WL 4086154, at *3.

[77] § 323(a).

and neither is the trustee. Even if the "tip" or "incentive bonus" results from the trustee's

exercise of his authority as trustee, it is unavoidably proceeds of property of the estate.

Viewing a carve-out as a gift, "tip," or "incentive bonus" from the secured creditor to the

trustee, as opposed to proceeds from the sale of estate property, creates two additional problems.

First, the Trustee Handbook precludes a trustee and a trustee's employees from "solicit[ing] or

accept[ing] any gratuity, gift, or other remuneration or thing of value from any person, if it is

intended or offered to influence the official actions of the trustee in the performance of the

trustee's duties."[78] It is difficult to see how a trustee accepting a "tip" from a secured creditor

does not run afoul of this provision. The tip is a *quid pro quo* between the secured creditor and

the trustee. A secured creditor typically benefits when a trustee liquidates its collateral because it

avoids the difficulties associated with foreclosure. To entice the trustee to administer the asset,

the secured creditor offers the tip and may, as in these cases, provide that it will go to unsecured

creditors. The intent is not to benefit unsecured creditors, of course; the intent is to have the

trustee sell the property in exchange for remuneration.[79]  But the provision that the tip will go to

unsecured creditors allows the trustee to come before the court armed with the argument that in

administering this asset, he is fulfilling his statutory duty by benefitting unsecured creditors,

thereby insulating the arrangement from scrutiny. This argument is facile and belies the true

nature and purpose of the transaction. Any benefit to unsecured creditors is purely incidental. In

---

[78] Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, 2-8 (2012).

[79] The Trustee admits as much when he concedes that the IRS "actively supports the Trustee selling the Propert[ies] (as evidenced by the Section 506(c) Stipulation[s])," and that he "has been encouraged by a creditor to [sell the Properties]." Docket No. 27 in Case No. 15-29773, Trustee's Objection to Debtors' Motion for Order of Abandonment, for Order Requiring Trustee to Comply, and for Status Hearings and Response to Debtors' Objections, at 8, 10.

the present cases, the asserted benefit to unsecured creditors is also misleading. Because the IRS reserved its general unsecured claims in these cases, if the Carve-Outs are not paid to the USTC's priority claim, the IRS stands to receive a significant portion of the Carve-Outs as a distribution on their unsecured claims.

If the Court believed that the Carve-Outs could be distributed to unsecured creditors and permitted the sales to go forward, the full extent of the Trustee's incentive to sell the Homes would come into focus: The IRS would be relieved of liquidating its collateral and the Trustee would stand to receive a statutory commission on all sale proceeds that are distributed to parties in interest, including holders of secured claims.[80] The Trustee's combined commission could be $43,850 based on the proposed sale prices of the Homes. Because the Trustee has employed his firm to assist in the sale of the Homes, if the Court approved the sale and awarded those fees, the Trustee's firm would receive $66,508.60 in addition to the trustee's commission.[81] The power of this incentive cannot be overstated. The tip, clearly a "thing of value," is offered for no other reason than to entice the trustee to administer property that otherwise would not be administered. At worst, it is an attempt to influence the official actions of the Trustee in the performance of his duties.

Viewing a carve-out simply as a gift from the secured creditor is also problematic because trustees have no authority to receive or administer gifts. The duties of a chapter 7 trustee are defined and limited by § 704 of the Code. Among other things, the trustee is required to "collect

---

[80] *See* § 326(a).

[81] In these cases, the administrative expenses the Trustee and his law firm seek through their applications total $66,508.60, which would be paid from the sale proceeds of the Homes under § 724(b)(2) pursuant to the Stipulations. In total, the Trustee stood to earn $110,358.60 in these cases by selling the Properties pursuant to the Stipulations.

and reduce to money the *property of the estate* for which such trustee serves."[82] The Trustee has

no duty to reduce to money any property that is not property of the estate. Further, the Trustee has

no authority to administer property that is not property in which the estate has an interest. As a

consequence, if the Carve-Outs are gifts from the IRS and not proceeds from the sale of the

Properties, the Trustee has no authority to receive or administer them.

**3. Section 724 Provides No Basis for the Carve-Outs.**

There is no provision in § 724 that enables the sale of "property in which the estate has an

interest"—it only dictates how the property or the proceeds of such property are to be distributed.

If the Trustee is not permitted to sell the Properties under § 363, there can be no proceeds and

§ 724 has no application. Even if the sale were permitted, nothing in § 724 permits the

distribution priority the Trustee seeks.

Initially, the Court notes that there is an apparent tension between § 724 and the clear

intent of § 522, which allows debtors to exempt property to assist in their fresh start. At least one

court has held that because § 724(b) subordinates tax liens to administrative claims, both tax

claims and priority claims take precedence over the debtor's homestead exemption.[83] Although

§ 724 does provide for subordination of tax liens to pay administrative expenses, this Court

concludes that § 724 does not take precedence over the Debtors' exemptions and § 724 does not

conflict with the Code's fresh start policy because properly exempted property is not subject to

the provisions of § 724.

---

[82] § 704(a)(1) (emphasis added).

[83] *Grochocinski v. Laredo (In re Laredo)*, 334 B.R. 401, 404 (Bankr. N.D. Ill. 2005); *see also In re Reeves*, No. 10-02562-8-SWH, 2011 WL 841238, at *2-3 (Bankr. E.D.N.C. Mar. 8, 2011).

27

Noticeably absent in § 724 is any provision regarding distribution or treatment of exempt property. By its own terms, § 724 is only applicable to property in which the estate has an interest and that is subject to a tax lien. Because a debtor may exempt the legal interest in fully-encumbered property,[84] if the secured interests and the value of the debtor's exemption exceed the value of the property, the estate has no equitable or legal interest in such properly exempted property. Section 724(b) has no application to property that is fully encumbered and properly exempted.

Other provisions of § 522 also demonstrate the consistency with § 724. Although § 522(c)(2)(B) states that exempted property remains liable for debts secured by properly filed tax liens it is clear that such property may be exempted. Section 522(c)(2)(B) does not compel the conclusion that the Debtors' homestead exemption is disallowed[85] or that the Trustee may liquidate the Homes in order to satisfy the tax liens to the detriment of the Debtors' homestead exemptions.[86] Section 522(k) specifically provides that exempt property is not liable for payment of administrative expenses except in two specific instances not applicable here. But it is inconsistent with § 522(k) if exempted property is subject to distribution under § 724(b) and used to pay administrative expenses.[87] Debtors would be severely prejudiced if properly exempted

---

[84] *Owen*, 500 U.S. at 308-09.

[85] *See In re Covington*, 368 B.R. 38, 40 (Bankr. E.D. Cal. 2006) (noting that § 522(c)(1), an analogous provision, "does not provide for the disallowance of an exemption").

[86] *See id.* at 41 ("[T]he trustee has cited no authority indicating that he may liquidate otherwise exempt property because the debtor happens to owe a nondischargeable tax claim.").

[87] The Court recognizes that § 724(b) may apply if there is sufficient value in the exempted property to pay debtors the value of their exemption prior to distribution under § 724(b).

property were subject to distribution through application of § 724.[88] Not only would debtors lose

their exempt property, but because tax debts are often excepted from discharge,[89] debtors may be

burdened with tax debt that could have been satisfied from the property—in effect, they could

also be saddled with the administrative expenses of the case.

But assuming that property that is fully-encumbered and properly exempted is

nevertheless within the scope of § 724, the analysis of the Carve-Outs is the same as explained

above. The Carve-Outs are proceeds from the Homes and represent value that results from the

IRS's agreement to cap its secured claim. Section 724(b) only changes distribution priorities by

permitting chapter 7 trustees to step into the shoes of tax lien claimants. Non-tax lien claimants,

other than administrative claimants, are unaffected by § 724. The Trustee and the IRS are not

permitted to create a carve-out that violates the provisions of the Code by altering the priorities

of distribution or prejudicing junior lien holders or the Debtors.

There is another reason why the Carve-Outs are not subject to § 724(b). Section 724(b)

only applies to property in which the estate has an interest and is subject to a lien that secures an

allowed tax claim. The IRS expressly agreed to subordinate any lien or claim it may have to the

Homes and proceeds from the sale of the Homes to the extent of the Carve-Outs. By the express

---

[88] This Court disagrees that distribution of exempt property under § 724(b) only affects priority creditors and the tax lien claimant. *Contra In re Laredo*, 334 B.R. at 412 ("The only parties affected by the operation of § 724(b) are the priority claimants and the tax lien creditors.") (citation and internal quotation marks omitted); *see also In re Reeves*, 2011 WL 841238, at *2 ("Since the administrative claimants are only allowed to step into the shoes of the tax creditor to the extent of the tax lien, the only parties affected by the operation of § 724(b) are the priority claimants and the tax lien creditor.").

[89] *See* § 523(a)(1).

terms of the Stipulations, the Carve-Outs are not subject to the IRS liens and § 724(b) has no

application to the Carve-Outs.

**4. Section 506(c) Provides No Basis for the Carve-Outs.**

The Stipulations, which the Trustee refers to singly as the "Stipulation Pursuant to 11

U.S.C. § 506(c),"[90] are the asserted bases for the Carve-Outs. In other words, § 506(c) is the

chosen statutory vehicle for the Trustee to receive the Carve-Outs. But it is important to

recognize the scope of § 506(c). Section 506(c) cannot be invoked to sell property—that

authority exists in § 363. Also, § 506(c) only permits a trustee to "***recover*** from property securing

an allowed secured claim the reasonable, necessary ***costs and expenses*** of preserving, or

disposing of, such property to the extent of any benefit to the holder of such claim."[91] A trustee's

carve-out of the kind at issue in these cases is not, as *Diener* states, consistent with § 506(c). A

§ 506(c) surcharge is limited to costs and expenses the trustee has incurred relating to a secured

creditor's collateral and is not a means for a trustee to receive a tip or a bonus that exceeds the

actual costs and expenses the trustee incurred.

Here, the Trustee and the IRS are attempting to shoehorn their arrangement into § 506(c),

but it does not quite fit. The Carve-Outs do not represent the work the Trustee undertook to

---

[90] Docket No. 28 in Case No. 15-29773, Motion to Approve Section 506(c) Stipulation, Ex. A; Docket No. 26 in Case No. 15-29783, Motion to Approve Section 506(c) Stipulation, Ex. A.

[91] § 506(c) (emphasis added). Section 506(c) authorizes a trustee to receive nothing more than reasonable, necessary costs and expenses, which can include "appraisal fees, auctioneer fees, advertising costs, moving expenses, storage charges, payroll of employees directly and solely involved with the disposition of the subject property, maintenance and repair costs, and marketing costs." *Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995) (citation omitted).

market and sell the Homes. The structure of the sales dictate that the Trustee would be paid his

administrative expenses in full through § 724(b)(2) *prior to* payment of the Carve-Outs,[92] and the

Carve-Outs would "come[] out of what the IRS would otherwise receive pursuant to section

724(b)(3)."[93] As the Trustee succinctly put it, "the Carve-Out[s] will not be used to pay

administrative claims."[94] The Carve-Outs would be in addition to—and not the source of—the

funds used to compensate the Trustee for his work in selling the Homes. Therefore, the Carve-

Outs cannot represent costs and expenses incurred for the purposes of preserving or disposing of

secured property. In short, the Carve-Outs are not a § 506(c) surcharge. The argument that the

Trustee and the IRS have agreed to designate the Carve-Outs as payments under § 506(c) is

unavailing. The fact that parties agree to call an apple an orange does not mean that a court must

adjudicate that it is an orange. Stipulations cannot bind courts with respect to questions of law,

and stipulations cannot be approved if they violate the law.[95]

**C. The Trustee's Stipulations and Sale Motions Attempt to Impermissibly Subordinate the Debtors' Homestead Exemptions and Limit the Debtors' Discharge.**

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but

unfortunate debtor.'"[96] The Supreme Court has described that fresh start as "a new opportunity in

---

[92] *See* Docket No. 55 in Case No. 15-29773, Motion to Approve Sale of Real Property Free and Clear of Liens, at 8 ("Since administrative claims are paid pursuant to Section 724(b)(2), the bankruptcy estate[s] will receive the Carve-Out[s] <u>net</u> of administrative claims.").

[93] *Id.*

[94] *Id.*

[95] *See supra* note 72.

[96] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).

31

life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."[97] Among the essential components of a fresh start are the exemptions permitted to debtors by law. By allowing debtors to retain property essential for life as well as their allotted share of proceeds from the sale of exemptible property, this nation's legislative bodies have protected its citizens from the lowest penury and given them a foundation on which to rebuild their finances. Utah's Supreme Court has advised that Utah's "exemption statutes are liberally construed in favor of the debtor to protect him and his family from hardship."[98] The homestead exemption in particular is a cornerstone of that safeguarding policy and an object of deep veneration under Utah law. The Utah Supreme Court has lauded it on multiple occasions in elegant language:

> [T]he homestead exemption is also established to provide for the family the element of shelter—shelter from the elements, shelter from the public, shelter from disturbance and annoyance from the outside world. It is to assure a haven of rest, a place where children may enjoy a paradise of mother's love to soothe their hurts and heal their wounds, and where husband and wife may sit in the calm of the evening, shut in from the world, forget the toils of the road, and enjoy again the comfort and peace of early dreams come true, and the realization of the love nest they planned in the halcyon days of youth. . . . The object is to assure to the unfortunate debtor, and his equally unfortunate but more helpless family, the shelter and influence of the home.[99]

---

[97] *Grogan*, 498 U.S. at 286 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

[98] *Russell M. Miller Co. v. Givan*, 325 P.2d 908, 909-10 (Utah 1958); *see also Panagopulos v. Manning*, 69 P.2d 614, 618 (Utah 1937) (in the promotion of the homestead exemption "courts may well employ the most liberal and humane rules of interpretation").

[99] *Panagopulos*, 69 P.2d at 618.

Exemptions are a bulwark against destitution, but one that is not immune from being

undermined, circumvented, or torn down. A trustee should not eviscerate a debtor's fresh start by

seeking to disallow validly claimed exemptions.

An analysis of the Stipulations clearly shows how unfair and detrimental to the Debtors

they are. If the Trustee and the IRS had their way, the Trustee's fees, his counsel's fees, and the

real estate commission would be paid from the sale of the Homes, thereby reducing the proceeds

available to pay tax claims. The end result of the Stipulations would be to deprive the Debtors of

their Homes and their homestead exemptions while leaving the Debtors with less available

property to pay their tax claims as a result of unnecessary administrative expenses.[100] In short, the

Stipulations force the Debtors to shoulder the heaviest burden. These types of bargains struck

between trustees and the IRS clearly have the potential to increase debtors' non-dischargeable tax

liabilities and burden them with unnecessary administrative expenses that would only enrich

trustees and their professionals, while simultaneously relieving the IRS of its dirty work. This is

the antithesis of a debtor's fresh start.

The Court will not read the provisions of § 724(b) or § 506(c) to somehow create an

exception to the general rule regarding a debtor's exemptions. Exempting property from the

bankruptcy estate puts it beyond the reach of unsecured creditors,[101] and a "court may not refuse

---

[100] Absent the Stipulations, the Debtors would remain in possession of the Homes, and their personal exposure would be limited because the full value of the Properties would be available to satisfy the IRS's claim. Even if the Debtors ultimately lost the Homes outside of bankruptcy, the IRS's debt would be satisfied.

[101] *See Scrivner v. Mashburn (In re Scrivner)*, 535 F.3d 1258, 1264 (10th Cir. 2008) ("Because the Code contains explicit exceptions to the general rule placing exempt property beyond the reach of the estate, we may not read additional exceptions into the statute.").

33

to honor the exemption absent a valid statutory basis for doing so."[102] "[Section] 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate."[103] If carve-outs of this nature are to be allowed, it would open the door for a bankruptcy trustee in cooperation with any tax lien creditor to systematically erode or extinguish a debtor's homestead exemption in favor of another class. Reordering of priorities must take place at the legislative level and is beyond the scope of a trustee's duties.[104]

"The Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor."[105] The Stipulations, as some sort of *quid pro quo*, attempt to bring meaning to otherwise meaningless and wasteful trustee's sales. It goes without saying that debtors who file for chapter 7 should expect to have their non-exempt assets with value liquidated for the benefit of their unsecured creditors.[106] That is one *quid pro quo* that the Code demands in order to earn a discharge. But debtors should not expect to have their fully-encumbered homes sold, to receive nothing in satisfaction of their homestead exemption, and to be potentially saddled with the costs of churning those homes, whether in chapter 7 or in chapter 13.

---

[102] *Law v. Siegel*, 134 S.Ct. 1188, 1196 (2014).

[103] *Id.*

[104] *See United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 229 (1996) ("[C]ategorical reordering of priorities . . . takes place at the legislative level of consideration [and] is beyond the scope of judicial authority.").

[105] *First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 694 (10th Cir. 2014) (quoting *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1248 (10th Cir. 2008)).

[106] *See Jacobowitz v. Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 435 (S.D.N.Y. 2004) ("Each individual debtor must liquidate his estate, allowing his creditors to reach a pro rata share of the debtor's non-exempt property.").

34

## IV. CONCLUSION

The Trustee's efforts to sell the Homes were not necessary to the administration of the cases. Any value in the Homes that was not fully encumbered was exempted by the Debtors, and the Trustee was not required to liquidate the Homes.

The Trustee's efforts to sell the Homes did not, and were not reasonably likely to, benefit the Debtors' estates. The Trustee was prohibited from selling the Homes because he was not able to pay the Debtors' homestead exemptions in full. Even if he had been able to sell the Homes, the Carve-Outs were subject to exemption by the Debtors pursuant to the express terms of the Stipulations and the Code. The Trustee's efforts were clearly futile unless he could eliminate the Debtors' exemptions. His only objection to the Debtors' exemptions was that the Debtors had no equity in the Homes to which their exemptions might attach. He did not cite any legal authority to support his position that he could avoid the Debtors' homestead exemptions because the Debtors lacked equity in the Properties. The Trustee cited case law for the proposition that the Homes are not exempt from the IRS's liens and case law holding that a carve-out is not, in some instances, proceeds of exempt property. But even if the case law the Trustee relies on is correct, it does not apply in these cases because the Stipulations expressly provided that the Carve-Outs were proceeds from the sale of the Homes and were to be distributed pursuant to provisions of the Code. This was readily apparent to the Trustee at the time all of his, and his firm's, services were performed. The Trustee's efforts to sell the Homes were unsupported by any provision of the Code and they were clearly inconsistent with one of the primary purposes of the Code—providing debtors with a fresh start through proper exemptions.

With those exemptions in place, the Trustee's efforts to negotiate the Carve-Outs with the IRS and sell the Homes were not reasonably likely to yield proceeds to distribute to unsecured creditors. Without a benefit to unsecured creditors, administration of the Homes was neither necessary nor reasonably likely to benefit the Debtors' estates. Accordingly, none of the Trustee's services for which he seeks compensation are allowable under § 330(a). The Court will deny the Trustee's fee applications in their entirety.

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Gary E. Jubber | gjubber@fabianvancott.com, UT07@ecfcbis.com mparks@fabianvancott.com;mdewitt@fabianvancott.com |
| Douglas J. Payne | dpayne@fabianvancott.com, mdewitt@fabianvancott.com |
| David P. Billings | dbillings@fabianvancott.com, aclark@fabianvancott.com |
| Paul J. Toscano | ptoscano@expresslaw.com |
| Boris Kukso | boris.kukso@usdoj.gov, western.taxcivil@usdoj.gov |
| Daniel D. Price | daniel.price2@usdoj.gov, emily.goodman@usdoj.gov |
| Lon Jenkins | ecfmail@ch13ut.org, lneebling@ch13ut.org |
| Armand J. Howell | armand@hwmlawfirm.com, meghan@hwmlawfirm.com |
| Benjamin J. Mann | stephen@hwmlawfirm.com, meghan@hwmlawfirm.com |
| Mark S. Middlemas | LundbergECFmail@Lundbergfirm.com, ecfmaildistgroup@lundbergfirm.com |
| Laurie A. Cayton | laurie.cayton@usdoj.gov, James.Gee@usdoj.gov Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov |
| U.S. Trustee | USTPRegion19.SK.ECF@usdoj.gov |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Brent and Jo-Ann Christensen
6358 Jamestown Court
Salt Lake City, UT 84121

John Thomas Bird
122 Manilla Drive
Draper, UT 84020