**This order is SIGNED.**



**Dated: February 27, 2019**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>BRENT DAVID CHRISTENSEN and<br>JO-ANN HALL CHRISTENSEN,<br><br>Debtors. | Bankruptcy Number: 15-29773<br><br>Chapter 13<br><br>Hon. R. Kimball Mosier |
| In re:<br><br>JOHN THOMAS BIRD,<br><br>Debtor. | Bankruptcy Number: 15-29783<br><br>Chapter 13<br><br>Hon. R. Kimball Mosier |

---

### MEMORANDUM DECISION

---

Brent and Jo-Ann Christensen and John Bird (collectively, the Debtors) believe that Gary

Jubber, the former chapter 7 trustee in these cases, and Fabian VanCott, the law firm employed

as his general counsel (collectively with Jubber, the Trustee), acted improperly in attempting to

sell their homes while their cases were in chapter 7. They now seek leave to sue the Trustee

outside this Court on grounds of breach of fiduciary duty, negligence, and civil conspiracy,

which the Trustee has opposed. The parties fully briefed the matter, and the Court conducted a

hearing on the Debtors' motions. After considering the parties' memoranda and oral arguments,

and after conducting an independent review of applicable law, the Court issues the following

Memorandum Decision denying the Debtors' motions for leave to sue.

## I. JURISDICTION

The Court's jurisdiction over this contested matter is properly invoked under 28 U.S.C.

§ 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), and the Court

may enter a final order. Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

The facts of these cases are laid out in the Court's prior decision regarding the Trustee's

applications for compensation, and the Court incorporates those facts herein by reference.[1] While

they do not bear repeating in toto, the salient facts can be summarized briefly. The Debtors

originally filed for relief under chapter 7. Among their assets were homes against which the IRS

had filed substantial liens, which left the homes over-encumbered as of the petition date. The

Trustee moved to sell the homes and, in conjunction with those sales, reached an agreement with

the IRS whereby it would provide a $10,000 carve-out to each estate while the Trustee would

receive payment of their fees from the IRS's lien under 11 U.S.C. § 724(b).[2] The Debtors

---

[1] *In re Christensen*, 561 B.R. 195 (Bankr. D. Utah 2016), *aff'd sub nom. Jubber v. Bird (In re Bird)*, 577 B.R. 365 (10th Cir. BAP 2017). The Court dealt with these two cases together in that decision because they "ha[d] the same procedural background and raise[d] the same issue." *Id.* at 197. The Court does the same here.
[2] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

objected to the sales in part because the Trustee did not propose to pay them anything on account of their claimed homestead exemptions, meaning they would lose their homes without receiving proceeds they could use to rent or purchase a new residence.[3]

Before the Court could rule on the sale motions, the Debtors converted their cases to ones under chapter 13. The Trustee subsequently filed applications for compensation for work done while the cases were in chapter 7, which the Court denied in their entirety. The Court held that the Trustee's efforts to sell the Debtors' homes were not necessary to the administration of the cases nor reasonably likely to benefit the Debtors' estates.[4] Approximately ten months after the Bankruptcy Appellate Panel for the Tenth Circuit affirmed this Court's decision on the Trustee's applications for compensation, the Debtors filed the present motions.

### III. DISCUSSION

The Debtors initially proposed filing complaints against the Trustee in this Court,[5] but their current requests are broader, seeking leave to sue the Trustee in "an appropriate forum."[6] By the Debtors' own admission, "an appropriate forum" includes state and federal district court.[7] As a result, the Debtors' requests entail consideration of the *Barton* doctrine.[8]

---

[3] The Trustee had objected to the Debtors' claimed homestead exemptions on the basis that there was no equity in the Debtors' homes to which the exemptions could attach. The Court overruled the objections and allowed the homestead exemptions. The Trustee then appealed the Court's orders allowing the exemptions in both cases to the U.S. District Court for the District of Utah. Before that court could rule on the merits, however, the Debtors disclaimed their homestead exemptions, rendering the appeals moot.

[4] *In re Christensen*, 561 B.R. at 217-18.

[5] *See* Docket No. 215 in Case No. 15-29773, at 5; Docket No. 235 in Case No. 15-29783, at 5.

[6] Docket No. 220 in Case No. 15-29773, at 3; Docket No. 241 in Case No. 15-29783, at 3.

[7] Docket No. 225 in Case No. 15-29773, at 8-9; Docket No. 245 in Case No. 15-29783, at 8-9.

[8] *See Carroll v. Abide*, 788 F.3d 502, 505 (5th Cir. 2015) (explaining that the *Barton* doctrine has been applied equally to requests to sue a bankruptcy trustee in state court and federal district court). Had the Debtors sought leave

As applied in the bankruptcy context, the *Barton* doctrine "precludes suit against a bankruptcy trustee for claims based on alleged misconduct in the discharge of a trustee's official duties absent approval from the appointing bankruptcy court."[9] The Tenth Circuit later extended the protections of the *Barton* doctrine to a bankruptcy trustee's counsel, "where counsel acts under the direction of, or as the functional equivalent of, the trustee."[10] But it is critical to untangle *Barton* from the various immunity doctrines with which it can become conflated. The confusion is understandable; since the *Barton* doctrine "operates as an obstacle for parties wishing to sue a bankruptcy trustee, it may be mistaken for a kind of trustee immunity."[11] In addition, some courts have considered—either as a part of, or in addition to, the *Barton* analysis—whether a trustee is entitled to some form of immunity against suits for actions taken during his administration of the case.[12] But neither *Barton*'s role-as-obstacle nor the examination of immunity in the *Barton* context should lead one to conflate the doctrine with the substantive

---

to sue the Trustee in this Court alone, however, the *Barton* doctrine would not apply. *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 4-5 (1st Cir. 1999) ("[A] long line of cases has required leave from the bankruptcy court before allowing an action against the trustee to proceed *in another tribunal*. Neither these precedents nor the rationale that undergirds them have any application to proceedings in the court that is overseeing administration of the bankruptcy estate.") (citations omitted); *CERx Pharmacy Partners, LP v. RPD Holdings, LLC (In re Provider Meds, LP)*, 514 B.R. 473, 476 (Bankr. N.D. Tex. 2014) ("[A] party does not need leave to sue a trustee in the appointing court.").

[9] *Satterfield v. Malloy*, 700 F.3d 1231, 1234-35 (10th Cir. 2012); *see also Phoenician Mediterranean Villa, LLC v. Swope (In re J & S Props., LLC)*, 545 B.R. 91, 98 (Bankr. W.D. Pa. 2015) ("If a plaintiff wants to bring suit against a bankruptcy trustee in a forum other than the bankruptcy court, the *Barton* doctrine requires approval of the bankruptcy court in order to proceed in the alternate forum."), *aff'd sub nom. Phoenician Mediterranean Villa, LLC v. Swope*, 554 B.R. 747 (W.D. Pa. 2016), *aff'd*, 872 F.3d 138 (3d Cir. 2017).

[10] *Lankford v. Wagner*, 853 F.3d 1119, 1122 (10th Cir. 2017). There is no dispute that Fabian VanCott is entitled to the protections of *Barton* as Jubber's general counsel.

[11] *In re World Mktg. Chicago, LLC*, 584 B.R. 737, 745 (Bankr. N.D. Ill. 2018).

[12] *See In re J & S Props., LLC*, 545 B.R. at 98 ("[A] bankruptcy court may, but is not required to, consider whether the trustee should enjoy immunity as a basis for disallowing the matter to proceed in another forum."); *In re World Mktg. Chicago, LLC*, 584 B.R. at 745 ("[T]he existence of an immunity defense might play into a bankruptcy court's weighing of a matter under the *Barton* doctrine.").

immunities conferred on trustees. Instead, the protections it offers are entirely procedural.[13]

Stated another way, *Barton* "does not shield trustees from lawsuits. Rather, the doctrine requires

the bankruptcy court to determine *where* the suit may be brought, not *whether* the trustee may be

sued."[14] In sum, *Barton* is strictly a "jurisdictional gatekeeping doctrine,"[15] and it strips all

courts—except the bankruptcy court that appointed the trustee—of subject-matter jurisdiction to

hear a lawsuit against the trustee unless the appointing court gives its permission to sue the

trustee elsewhere.[16] Only if the Debtors' proposed complaints pass through *Barton*'s

jurisdictional gate will the Debtors be able to file suit against the Trustee outside of this Court.

At the outset, the Court must determine whether *Barton* applies to the Trustee's acts or

whether those acts fall within one of two exceptions to the doctrine,[17] which permit a plaintiff to

sue a trustee in another forum without leave of the appointing court. The first exception, codified

at 28 U.S.C. § 959(a), applies if the acts complained of involve a trustee's operation of a debtor's

business.[18] That provision is "intended to permit actions redressing torts committed in

---

[13] *See Satterfield*, 700 F.3d at 1234 ("[T]he *Barton* doctrine is jurisdictional in nature."); *see also In re World Mktg. Chicago, LLC*, 584 B.R. at 745 ("The *Barton* doctrine gives an appointing court the authority to govern jurisdiction over suits. It is not a form of immunity in and of itself.") (citation omitted); *Katz v. Kucej (In re Biebel)*, Adv. No. 08-3115, 2009 WL 1451637, at *6 n.18 (Bankr. D. Conn. May 20, 2009) ("The *Barton* Doctrine is jurisdictional. Quasi-judicial immunity is substantive. They are not the same thing.").

[14] *In re J & S Props., LLC*, 545 B.R. at 98.

[15] *Baron v. Sherman (In re Ondova Ltd.)*, Adv. No. 14-03121-SGJ, 2017 WL 477776, at *9 (Bankr. N.D. Tex. Feb. 1, 2017), *report and recommendation adopted*, No. 3:16-CV-00947-M, 2018 WL 580151 (N.D. Tex. Jan. 26, 2018), *aff'd*, 914 F.3d 990 (5th Cir. 2019).

[16] *See id.*; *see also Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 884 (9th Cir. BAP 1995) ("Courts have long held that the nonappointing court may not entertain suits against the trustee for acts done in the trustee's official capacity without leave from the appointing court because the other court lacks subject matter jurisdiction.").

[17] *Wasserman v. Durie Props., LLC (In re Day)*, Adv. No. 13-1959, 2014 WL 636797, at *23 (Bankr. D.N.J. Feb. 7, 2014), *aff'd sub nom. Durie Props., LLC v. Wasserman (In re Day)*, No. 14-01908 (SRC), 2014 WL 4271647 (D.N.J. Aug. 28, 2014).

[18] *In re VistaCare Grp., LLC*, 678 F.3d 218, 226-27 (3d Cir. 2012). The relevant text of 28 U.S.C. § 959(a) reads: "Trustees, receivers or managers of any property . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property."

furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store."[19] It "does not apply to suits against trustees for administering or liquidating the bankruptcy estate."[20] The Trustee did not operate a business in the administration of these cases, so the statutory exception to the *Barton* doctrine is inapplicable.[21]

The second is the *ultra vires* exception, which applies when a trustee's actions exceed the bounds of his official duties. While this may seem at first glance like a potentially broad exception, to date the only situation found to fall consistently within it is "when a trustee wrongfully seizes possession of a third party's assets."[22] In *Satterfield*, the Tenth Circuit addressed the scope of the *ultra vires* exception in the context of suits brought, as in this case, by a debtor against a trustee. The Tenth Circuit held that in such cases the *ultra vires* exception does not apply if the plaintiff's "claims [are] based on acts that are related to the official duties of the trustee . . . even if the debtor alleges such acts were taken with improper motives."[23] Moreover,

---

[19] *Satterfield*, 700 F.3d at 1237 (citation and internal quotation marks omitted).

[20] *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000); *see also Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996) ("[Section] 959 does not apply where . . . a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate.").

[21] The Debtors acknowledge this point. *See* Docket No. 220 in Case No. 15-29773, at 5; Docket No. 241 in Case No. 15-29783, at 5.

[22] *Satterfield*, 700 F.3d at 1235; *see also Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 415 (6th Cir. 2013) ("In fact, thus far, courts have only applied the *ultra vires* exception to the actual wrongful seizure of property by a trustee or receiver."); *Kaliner v. Antonoplos (In re DMW Marine, LLC)*, 509 B.R. 497, 507 (Bankr. E.D. Pa. 2014) ("While no court has said as much definitively, it may be no exaggeration to state that the [*ultra vires*] exception applies only in cases in which a receiver wrongfully seizes or controls non-receivership property.").

[23] *Satterfield*, 700 F.3d at 1236; *see also McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) ("To determine whether a complained-of act falls under the *Barton* doctrine, courts consider the nature of the function that the trustee or his counsel was performing during commission of the actions for which liability is sought.").

there is a presumption that "acts were a part of the trustee's duties unless Plaintiff initially alleges at the outset facts demonstrating otherwise."[24]

The Debtors have not overcome that presumption. They have not alleged wrongful seizure of third-party assets, nor have they expressly argued that the Trustee's actions were *ultra vires*. The closest the Debtors come to making that argument is in their reply memoranda, where they assert that the Trustee's actions were not taken pursuant to statutory authority,[25] and in support they provide the following quote from the Court's earlier decision on the Trustee's applications for compensation: "The Trustee's efforts to sell the Homes were unsupported by any provision of the [Bankruptcy] Code."[26] But that statement was not a conclusion that the Trustee had acted *ultra vires*. When placed in context, the Court was simply stating that the Code did not permit the Trustee to accomplish the overall transaction that was proposed—i.e., selling the Debtors' homes, accepting the $10,000 carve-outs as proceeds of the sales, and distributing those proceeds without paying the Debtors' homestead exemptions. The Court certainly did not conclude that the Trustee lacked authority to sell property under § 363 or that the Trustee's actions were outside of the statutory duties under § 704. In fact, the acts the Debtors now complain of—that the Trustee objected to their homestead exemptions and sought to sell their homes—are well within a chapter 7 trustee's official duties.[27] The Debtors' allegation that the

---

[24] *Satterfield*, 700 F.3d at 1236 (quoting *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 322 (6th Cir. 2006)).

[25] *See* Docket No. 225 in Case No. 15-29773, at 4; Docket No. 245 in Case No. 15-29783, at 4.

[26] *In re Christensen*, 561 B.R at 218.

[27] For example, § 704(a)(1) expressly directs a trustee to "collect and reduce to money the property of the estate for which such trustee serves," and a trustee "must object to a claimed exemption if doing so benefits the estate." Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, 4-4 (2012).

Trustee took those actions primarily for self-enrichment is simply an assertion that the Trustee

acted with an improper motive. But the *ultra vires* exception focuses on "whether the acts were

within the scope of the trustee's official duties—not whether they were meritless, without

foundation, or brought for ulterior purposes."[28] An allegation of improper motive is insufficient

to demonstrate that the complained-of acts were not related to the Trustee's official duties.

Because the Trustee's actions taken to sell the Debtors' homes are related to the official duty to

liquidate property of the estate, they do not fall within the *ultra vires* exception. Since neither it

nor the statutory exception pertains, the *Barton* doctrine applies to the Debtors' requests and the

Debtors must obtain this Court's leave before suing the Trustee in another forum.[29]

The question of whether to grant leave involves a two-step analysis. First, the Court must

determine if the Debtors have made "a prima facie case showing that [their claims are] not

without foundation."[30] Failure to establish a prima facie case results in denial of leave to sue.[31]

In that instance, the Court may forgo the second step of the analysis: consideration of the

*Kashani* factors—named after the case that created them[32]—which assist a bankruptcy court in

---

[28] *In re McKenzie*, 716 F.3d at 416.

[29] The Debtors have not argued that *Barton* does not apply once a trustee is removed from a case. (Jubber was removed from these cases when the Debtors converted them to chapter 13.) Even if they had made such an argument, the Court would conclude that the *Barton* doctrine still applies notwithstanding a trustee's removal. Certain policy reasons undergirding the *Barton* doctrine remain pertinent even after bankruptcy estate administration has ended, and circuit courts, including the Tenth Circuit, agree that *Barton* applies in closed cases. *Satterfield*, 700 F.3d at 1236; *see also Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004); *In re Linton*, 136 F.3d 544, 545-46 (7th Cir. 1998) (applying *Barton* to a request to file a lawsuit against a trustee eleven months after the bankruptcy case had been closed). Those policy reasons hold just as true in converted cases, and the Court sees no basis to distinguish these formerly chapter 7 cases from closed cases for purposes of applying *Barton*.

[30] *Wagner v. Lankford (In re Vaughan Co., Realtors)*, Adv. No. 12-1139, 2014 WL 585288, at *2 (Bankr. D.N.M. Feb 14, 2014) (quoting *In re VistaCare Grp., LLC*, 678 F.3d at 232). The same standard applies to requests to sue trustee's counsel. *See Morris Healthcare & Rehab. Ctr., LLC v. Berish (In re Morris Senior Living, LLC)*, 526 B.R. 750, 757-58 (N.D. Ill. 2014).

[31] *In re World Mktg. Chicago, LLC*, 584 B.R. at 743.

[32] *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886-87 (9th Cir. BAP 1995).

deciding whether it should retain control of proposed litigation against a trustee despite the plaintiff's establishment of a prima facie case.[33]

Although similar to the standard for evaluating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the "not without foundation" standard is more flexible.[34] To avoid dismissal under Rule 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face."[35] Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] Where the well-pleaded facts "are 'merely consistent with' a defendant's liability," the plaintiff has not crossed the "'line between possibility and plausibility of entitlement to relief.'"[37] A court reviewing a complaint under Rule 12(b)(6) must "accept as true all well-pleaded factual allegations . . . and view them in the light most favorable to the [plaintiff]."[38] Bare assertions and conclusory allegations are not entitled to the presumption of truth, however.[39]

The Debtors' draft complaints, attached to their motions,[40] allege four claims each: two breach of fiduciary duty claims, one each against Jubber and Fabian VanCott; one claim for

---

[33] *Strand v. Loveridge*, No. 2:07-cv-00576-DAK, 2008 WL 893004, at *2 (D. Utah Mar. 28, 2008).

[34] *In re VistaCare Grp., LLC*, 678 F.3d at 232. While the Court is evaluating the Debtors' draft complaints under a more flexible Rule 12(b)(6) rubric for purposes of the *Barton* analysis, any conclusions regarding whether the Debtors have made a prima facie case on their claims are not intended to be preclusive or binding if the Debtors later file complaints against the Trustee in this Court that become the target of Rule 12(b)(6) motions. As the Debtors have acknowledged, the draft complaints are expressly "subject to modification," so any future complaints would receive a fresh evaluation under the ordinary Rule 12(b)(6) standard. In short, the Court is not prejudging any complaints that the Debtors may file.

[35] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[37] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[38] *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (citation and internal quotation marks omitted).

[39] *Iqbal*, 556 U.S. at 681.

[40] *See* Docket No. 220 in Case No. 15-29773, at 8-17; Docket No. 241 in Case No. 15-29783, at 8-16.

9

negligence against Fabian VanCott; and a civil conspiracy claim against Jubber and Fabian

VanCott. The Court will address them in turn.

Under Utah law, a breach of fiduciary duty claim requires a plaintiff to show "that the

defendant owed a duty, the defendant breached the duty, the plaintiff suffered damages, and the

plaintiff's damages were actually and proximately caused by the defendant's breach."[41]

Specifically, a plaintiff asserting a breach of fiduciary claim must "demonstrate the existence of

a fiduciary relationship between the plaintiff and the defendant, which gives rise to a

particularized and enhanced duty of care."[42] Accordingly, to state a claim for breach of fiduciary

duty the Debtors must plausibly allege, at the outset, the existence of a fiduciary relationship

between the Trustee and the Debtors in these cases.

A chapter 7 trustee's duties derive from several sources. Section 704, for example,

prescribes duties a trustee must perform while administering a case. But those statutory duties

are distinct from a trustee's fiduciary obligations, which are creatures of common law.[43]

Ordinarily, a trustee's fiduciary duties lie to the estate and its creditors.[44] When courts have held

that a trustee owes a debtor fiduciary duties, they have generally done so only if the debtor has

an interest in surplus proceeds distributed under § 726(a)(6) or properly exempted property of the

---

[41] *Giles v. Mineral Res. Int'l*, 338 P.3d 825, 827 (Utah Ct. App. 2014).

[42] *Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 417 P.3d 95, 110 (Utah 2018) (citations and internal quotation marks omitted).

[43] *In re Ondova Ltd.*, 2017 WL 477776, at *12; *see also* Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, 1-2 (2012) ("[T]he trustee's primary *statutory* duties are set forth in part in section 704 of the Bankruptcy Code.") (emphasis added).

[44] *E.g.*, *In re Morris Senior Living, LLC*, 504 B.R. 490, 491 (Bankr. N.D. Ill. 2014), *aff'd sub nom. Morris Healthcare & Rehab. Ctr., LLC v. Berish (In re Morris Senior Living, LLC)*, 526 B.R. 750 (N.D. Ill. 2014).

10

estate.[45] The Handbook for Chapter 7 Trustees (Trustee Handbook) reaches a similar conclusion:

"The trustee is a fiduciary charged with protecting the interests of all estate beneficiaries—

namely, all classes of creditors, including those holding secured, administrative, priority, and

non-priority unsecured claims, as well as the debtor's interest in exemptions and in any possible

surplus property."[46]

        But the scope of any fiduciary duty must be defined precisely.[47] Without such definition,

the term "fiduciary duty" takes on an amorphous quality that leaves parties in a fiduciary

relationship unsure of their respective rights and obligations. In the case of a chapter 7 trustee

and debtor, a fiduciary relationship between the two does not exist until the trustee holds

property to which the debtor is entitled either because the debtor has a validly claimed exemption

in it or it constitutes a surplus after payment of all claims. The context in which that relationship

arises defines the scope of the trustee's duties. A debtor's entitlement to exempt or surplus

property does not create a vast array of fiduciary duties running from a trustee to a debtor, nor

does it oblige a trustee to act broadly in the debtor's best interests.[48] A trustee becomes a

---

[45] *See Wisdom v. Gugino*, 649 F. App'x 583, 584 (9th Cir. 2016) ("When a debtor retains an interest in estate
assets—either by properly claiming exemptions or because surplus property will remain in the estate after all
creditors have been compensated—the trustee owes a fiduciary duty to the debtor as well."); *Pergament v. Varela
(In re Varela)*, 530 B.R. 573, 584 (Bankr. E.D.N.Y. 2015) ("There is a discrete set of parties whose interests must be
safeguarded by the trustee: creditors; shareholders; and the debtor may become a member of this group should the
estate become solvent.") (citation and internal quotation marks omitted); *Ebel v. King (In re Ebel)*, 338 B.R. 862,
874 (Bankr. D. Colo. 2005) ("In those rare cases where a chapter 7 bankruptcy trustee owes a fiduciary duty to a
chapter 7 debtor, that duty is triggered by the debtor's status as a party in interest as to the assets of a surplus
estate.").

[46] Exec. Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees, 4-2 (2012).

[47] *See, e.g.*, *Pyper v. Reil*, --- P.3d ----, No. 20170503-CA, 2018 WL 5077796, at *5-7 (Utah Ct. App. Oct. 18, 2018)
(explaining the scope of an escrow agent's fiduciary duties under Utah law and declining to expand it).

[48] For example, a trustee has an obligation to maximize returns to creditors, Exec. Office for U.S. Trustees, U.S.
Dep't of Justice, Handbook for Chapter 7 Trustees, 4-1 (2012), but has no independent duty to generate sufficient
proceeds to provide a surplus to the debtor. The Debtors have alleged that the Trustee owed them fiduciary duties to

fiduciary vis-à-vis a debtor because he holds property that belongs to the debtor by operation of law. The scope of his duty, therefore, is strictly limited to safeguarding property of the estate in the trustee's possession or the proceeds from the sale thereof to which the debtor is entitled and ensuring that the debtor receives that property.[49]

The facts of *Wisdom* bear this out. In *Wisdom*, a chapter 7 debtor had claimed a $5,000 exemption in each of multiple life insurance policies, but the exemption law he chose permitted him a single $5,000 exemption across all policies. When the trustee objected to the exemptions and liquidated the policies, sending the debtor the $5,000 to which he was entitled, the debtor alleged the trustee had breached his fiduciary duty to him. On appeal, the Ninth Circuit Court of Appeals held that the trustee had not breached his duty: "To the extent [the trustee] owed a duty to preserve [the debtor's] interest in the exempt value of his life insurance, [he] fulfilled that duty by paying over the exempt liquidation proceeds."[50] In short, a trustee's only owes fiduciary duties to a debtor in certain narrow circumstances. To whom trustee's counsel owes fiduciary duties is a more complex question. At least one court has stated that a "lawyer hired by a trustee in bankruptcy to do legal work for the estate, like the trustee himself, is a fiduciary of the estate."[51] Because it will not affect the outcome, the Court will assume, for purposes of this decision, that a trustee's attorney owes fiduciary duties coextensive with those the trustee owes.

---

act in their best interests, *see* Docket No. 220 in Case No. 15-29773, at 16; Docket No. 241 in Case No. 15-29783, at 15, but have provided no support for that conclusory statement.

[49] *See Slaieh v. Simons*, 584 B.R. 28, 41 (C.D. Cal. 2018) ("[E]ven if Trustee owed [the debtor] a fiduciary duty in this case, it was as to his interest in surplus *estate* property, not as to personal property abandoned following eviction.").

[50] *Wisdom*, 649 F. App'x at 584.

[51] *In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995), *abrogated on other grounds by Lamie v. U.S. Tr.*, 540 U.S. 526 (2004).

Here, the Debtors' draft complaints allege that the Trustee owed all parties in interest, including the Debtors, the following fiduciary duties: (1) to exercise due care, diligence, and skill; (2) to act primarily for the benefit of unsecured creditors; (3) to abandon fully encumbered assets; (4) to not administer or liquidate assets if the proceeds of liquidation would primarily benefit the Trustee.[52] Even assuming, without deciding, that these constitute certain of a chapter 7 trustee's fiduciary duties,[53] the complaints do not plausibly allege that the Trustee owed them to the Debtors. The complaints do not contain factual averments to the effect that there was a surplus or exempt proceeds for the Trustee to safeguard for the Debtors' benefit. There is no allegation whatsoever of a surplus, and the complaints only allege that the Debtors claimed homestead exemptions and the Trustee filed objections to them.[54] Merely claiming an exemption is insufficient to create a fiduciary relationship between a debtor and trustee. Accordingly, even under the more flexible "not without foundation" standard, the Court cannot reasonably infer that a fiduciary relationship existed between the Trustee and the Debtors. Stated simply, the complaints do not plausibly allege that the Trustee owed a fiduciary duty to the Debtors under the facts of these cases.

---

[52] Docket No. 220 in Case No. 15-29773, at 11-13; Docket No. 241 in Case No. 15-29783, at 11-12.

[53] The Court declines to endorse categories two, three, and four as completely accurate statements of a trustee's fiduciary duties. Viewed together, however, those categories are essentially three different ways of stating that a trustee should refrain from self-dealing, which *Black's* defines as "participation in a transaction that benefits oneself instead of another who is owed a fiduciary duty." *Self-Dealing*, Black's Law Dictionary (8th ed. 2005). Self-dealing violates the fiduciary duty of loyalty, which is a "person's duty not to engage in self-dealing or otherwise use his or her position to further personal interests rather than those of the beneficiary." *Duty of Loyalty*, *id.* The Court will therefore interpret the second, third, and fourth categories as alleging that the Trustee's fiduciary duties included the duty of loyalty, which is among a trustee's core fiduciary duties. *See Hunter v. Madrid (In re Hunter)*, 553 B.R. 866, 872 (Bankr. D.N.M. 2016).

[54] *See supra* note 3 for a brief description of the procedural history regarding the Debtors' homestead exemptions in these cases.

In addition, the Debtors have failed to plausibly allege a breach of fiduciary duty. The only duty the Trustee could have owed to the Debtors was to preserve and protect exempt or surplus proceeds in his possession. Because the Trustee held no such proceeds, that duty never arose, and the Trustee could not breach a non-existent duty. The complaints essentially allege that the Trustee breached the duty of loyalty—though they do not use that term[55]—by attempting to sell the Debtors' homes "where the primary benefit of the sale would be to Jubber, the professionals in the case, and the IRS."[56] But the Trustee did not owe the Debtors a duty of loyalty, and in any event, the complaints fail to plausibly allege a breach of that duty. The facts related to the breach of the duty of loyalty allegations are that the sales of the Debtors' homes would provide little to no proceeds for general unsecured creditors and that a primary purpose of the carve-out agreements the Trustee reached with the IRS was to enrich the Trustee. But these facts are not enough for the Court to draw the reasonable inference that the Trustee breached a fiduciary duty.[57] The complaints provide no additional factual enhancement regarding how the carve-out agreements primarily benefited the Trustee. Moreover, merely entering into an agreement with the IRS to provide a $10,000 carve-out for unsecured creditors does not support a breach of the duty of loyalty allegation. Because the Debtors have not plausibly pleaded that a fiduciary relationship existed between them and either Jubber or Fabian VanCott or that Jubber or Fabian VanCott breached a fiduciary duty, they have not established a prima facie case that their breach of fiduciary duty claims are not without foundation.

---

[55] *See supra* note 53.

[56] Docket No. 220 in Case No. 15-29773, at 12-13; Docket No. 241 in Case No. 15-29783, at 11-13.

[57] *See Iqbal*, 556 U.S. at 678.

14

The Debtors' negligence claims against Fabian VanCott also fail. The elements of a negligence claim under Utah law are "virtually the same" as those for a breach of fiduciary duty claim: "(1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff."[58] The difference between the two types of claims "lies mainly in the type of duty owed."[59] In a breach of fiduciary duty claim, the question is whether a fiduciary relationship exists between the plaintiff and defendant that "gives rise to a particularized and enhanced duty of care."[60] In a negligence claim, by contrast, the plaintiff must show that the defendant owes him a duty of reasonable care.[61] The existence of that duty is the "threshold question in a negligence claim."[62]

The draft complaints make two assertions of duties owed by Fabian VanCott with respect to the negligence claim, but neither plausibly alleges that Fabian VanCott owed the Debtors a duty. First, the complaints state that Fabian VanCott owed duties to the Debtors that are the same as those alleged in the breach of fiduciary duty claims: (1) to exercise due care, diligence, and skill; (2) to act primarily for the benefit of unsecured creditors; (3) to abandon fully encumbered assets; (4) to not administer or liquidate assets if the proceeds of liquidation would primarily benefit the Trustee. The Court has already determined, however, that the draft complaints do not plausibly allege that Fabian VanCott owed a duty of loyalty to the Debtors. Second, the draft

---

[58] *Gables at Sterling Village Homeowners Ass'n, Inc.*, 417 P.3d at 110 (quoting *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985)).
[59] *Id.*
[60] *Id.* (citation and internal quotation marks omitted).
[61] *Id.*
[62] *Mower v. Baird*, 422 P.3d 837, 843 (Utah 2018).

15

complaints assert that "Fabian VanCott had a duty to exercise due care, diligence, and skill in representing Jubber and the estate."[63] Even if true, there are no allegations that these duties ran to the Debtors. In addition, the Debtors have not plausibly alleged that Fabian VanCott breached its duties. Because the Debtors have not plausibly alleged that Fabian VanCott owed or breached a duty to them in connection with these cases, the Debtors have not made a prima facie case showing that their negligence claims are not without foundation.

The Debtors' civil conspiracy claims also fail because they do not plausibly allege an essential element. Civil conspiracy has five elements under Utah law: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[64] In addition, "in order to sufficiently plead a claim for civil conspiracy, a plaintiff is obligated to adequately plead the existence of [an underlying] tort. Where plaintiffs have not adequately pleaded *any* of the basic torts they allege[,] dismissal of their civil conspiracy claim is appropriate."[65] While there appears to be some uncertainty regarding whether there is a difference between the underlying tort and unlawful, overt act requirements,[66] that is not material to this decision.

The Debtors have not made a prima facie case on their breach of fiduciary duty or negligence claims. As a result, those claims cannot serve as either an underlying tort or an

---

[63] Docket No. 220 in Case No. 15-29773, at 14; Docket No. 241 in Case No. 15-29783, at 14.
[64] *Timothy v. Pia, Anderson, Dorius, Reynard & Moss LLC*, 424 P.3d 937, 946 (Utah Ct. App. 2018) (citation and internal quotation marks omitted).
[65] *Id.* (citations and internal quotation marks omitted).
[66] *See id.* at 946-47.

16

unlawful, overt act in the context of their civil conspiracy claims. Moreover, the Debtors have

not plausibly alleged the existence of an unlawful, overt act separate from their breach of

fiduciary duty and negligence claims. The requirement that the overt act be unlawful is essential.

"If the object of the alleged conspiracy or the means used to attain it is lawful, even if damage

results to the plaintiff or the defendant acted with a malicious motive, there can be no civil action

for conspiracy."[67] While the Court overruled the Trustee's objections to the Debtors' homestead

exemptions and disagreed with the Trustee's efforts to sell the Debtors' homes, holding that they

were neither necessary to the administration of the cases nor reasonably likely to benefit the

Debtors' estates,[68] the Trustee did not act unlawfully in seeking to sell those homes. The

assertion that the Trustee would receive compensation from the sales is not a plausible allegation

of an unlawful, overt act. In addition, courts have diverged on the issue of whether a chapter 7

trustee can receive a carve-out from the sale of over-encumbered real property at the expense of

a debtor's homestead exemption in the property,[69] and the law in this district offered no binding

precedent. The Trustee's attempt to achieve what has been permitted in other jurisdictions can

hardly be declared unlawful. Without a plausible allegation of an unlawful, overt act, the Debtors

have not made a prima facie case that their civil conspiracy claims are not without foundation.

None of the Debtors' claims passes muster under a prima facie analysis. As mentioned

previously, failure to establish a prima facie case is a sufficient basis to end the *Barton* inquiry

and renders consideration of the *Kashani* factors unnecessary. Even so, the Court elects to

---

[67] *Peterson v. Delta Air Lines, Inc.*, 42 P.3d 1253, 1257 (Utah Ct. App. 2002) (quoting *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 792 (Utah Ct. App. 1987)).
[68] *In re Christensen*, 561 B.R. at 217.
[69] *See id.* at 211-12 (reviewing cases).

17

address those factors because even if the Debtors had made a prima facie case, those factors

favor denial of the Debtors' motions for leave to sue the Trustee in another forum. The *Kashani*

factors are:

1. Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate. If the proceeding is under 28 U.S.C. § 959(a), then no court approval is necessary. However, the moving party may request this initial review by the bankruptcy court in the motion for leave to sue the trustee, or perhaps in the form of a complaint, seeking a declaratory judgment from the bankruptcy court.

2. If approval from the appointing court appears necessary, do the claims pertain to actions of the trustee while administering the estate? By asking this question, the court may determine whether the proceeding is a core proceeding or a proceeding which is related to a case or proceeding under Title 11, United States Code.

3. Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity?

4. Are the movants or proposed plaintiffs seeking to surcharge the trustee; that is, seeking a judgment against the trustee personally?

5. Do the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct?[70]

Answering one or more of these factors in the affirmative can serve as a basis to deny leave to

sue.[71]

The first two *Kashani* factors can be addressed briefly. As mentioned in the context of the

*ultra vires* exception, the Trustee was not operating a business in these cases, so 28 U.S.C. § 959(a)

---

[70] *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 976 (9th Cir. 2005) (quoting *In re Kashani*, 190 B.R. at 886-87).
[71] *See Strand*, 2008 WL 893004, at *3-4.

is inapplicable. But the Debtors' claims arise out of the Trustee's attempts to sell their homes, so those claims pertain to the Trustee's administration of the Debtors' bankruptcy estates.[72]

The third factor—the Trustee's entitlement to immunity—is a much more complex issue. Whether immunity protects a trustee depends on the nature of the claim asserted. Under Tenth Circuit law, trustees are entitled to quasi-judicial immunity against claims other than those for breach of fiduciary duty as long as they "acted pursuant to statutory or court authority."[73] Since the Court has concluded that the Trustee acted within the scope of statutory authority in objecting to the Debtors' homestead exemptions and attempting to sell their homes, quasi-judicial immunity would shield the Trustee from personal liability against the Debtors' negligence and civil conspiracy claims. Quasi-judicial immunity offers less protection against breach of fiduciary duty claims, however. Breaches of the duty of care, which give rise to negligence claims, do not expose a trustee to personal liability.[74] But "quasi-judicial immunity offers no protection" against claims for breach of the duty of loyalty asserted by an estate beneficiary.[75] Since the Court has interpreted the Debtors' breach of fiduciary duty claims against the Trustee to assert breach of the duty of loyalty, immunity would be unavailing to the Trustee as long as the Debtors were estate beneficiaries when these cases were in chapter 7.

The fourth and fifth factors, like the first two, can be addressed succinctly. The Debtors admit that they seek to hold the Trustee personally liable, and that their claims involve the

---

[72] The Debtors concede this point. *See* Docket No. 220 in Case No. 15-29773, at 5; Docket No. 241 in Case No. 15-29783, at 5.

[73] *In re Hunter*, 553 B.R. at 871-72.

[74] *Id.* at 873.

[75] *Id.* The Debtors have not alleged that they were estate beneficiaries.

19

Trustee's breach of fiduciary duties "through either negligent or conscious misconduct."[76] Accordingly, those factors support denial of leave to sue.

Because at least three of the *Kashani* factors are answered clearly in the affirmative, that favors denial of leave to sue and retention of jurisdiction by this Court over any claims the Debtors may allege against the Trustee.

## IV. CONCLUSION

The *Barton* doctrine requires, at a minimum, that a party seeking to sue a trustee in a forum other than the appointing bankruptcy court make a prima facie case that its claim is not without foundation. The Debtors have not achieved that standard with respect to any of their claims because each claim has at least one essential element that is not plausibly alleged. While that alone requires denial of the Debtors' motions for leave to sue in another forum, the *Kashani* factors provide additional grounds to deny those motions. As a result, the Debtors lack permission to sue the Trustee in state court or federal district court. But *Barton* does not preclude the Debtors from filing suit here if they so choose.[77] The Court will enter a separate Order and Judgment in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

---

[76] Docket No. 220 in Case No. 15-29773, at 5-6; Docket No. 241 in Case No. 15-29783, at 5-6.

[77] *See Smith v. Hilton (In re Swan Transp. Co.)*, --- B.R. ----, Adv. No. 17-50053 (BLS), 2018 WL 6841353, at *8 (Bankr. D. Del. Nov. 16, 2018) (dismissing without prejudice an unauthorized complaint filed in state court against a trustee, but not foreclosing the possibility that the court could later hear the lawsuit if properly filed).

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Paul James Toscano | ptoscano@expresslaw.com |
| Leslie W. Slaugh | slaughl@provolawyers.com, coomesm@provolawyers.com |
| Gary E. Jubber | gjubber@fabianvancott.com, mparks@fabianvancott.com, UT07@ecfcbis.com |
| Douglas J. Payne | dpayne@fabianvancott.com, mparks@fabianvancott.com, mdewitt@fabianvancott.com |
| David P. Billings | dbillings@fabianvancott.com, jwinger@fabianvancott.com, mdewitt@fabianvancott.com |
| Michael Ronald Brown | mbrown@parsonsbehle.com |
| Zack L Winzeler | ecf@parsonsbehle.com, zwinzeler@parsonsbehle.com |
| Daniel D. Price | daniel.price2@usdoj.gov, mykel.mason@usdoj.gov |
| Boris Kukso | boris.kukso@usdoj.gov, western.taxcivil@usdoj.gov |
| Darwin H. Bingham | dbingham@scalleyreading.net, cat@scalleyreading.net |
| Armand J. Howell | armand@hwmlawfirm.com, meghan@hwmlawfirm.com, armandh@ecf.courtdrive.com |
| Benjamin J. Mann | armand@hwmlawfirm.com, meghan@hwmlawfirm.com |
| Mark S. Middlemas | LundbergECFmail@Lundbergfirm.com, ecfmaildistgroup@lundbergfirm.com |
| Stephen B. Watkins | stephen@hwmlawfirm.com, meghan@hwmlawfirm.com |
| Lon Jenkins | ecfmail@ch13ut.org, lneebling@ch13ut.org |
| Laurie A. Cayton | laurie.cayton@usdoj.gov, James.Gee@usdoj.gov, Lindsey.Huston@usdoj.gov, Suzanne.Verhaal@usdoj.gov |
| U.S. Trustee | USTPRegion19.SK.ECF@usdoj.gov |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Brent and Jo-Ann Christensen
1218 El Sendero Circle
Salt Lake City, UT 84117

John Thomas Bird
122 Manilla Drive
Draper, UT 84020

21